UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JAMES CREWS, SR., in his own right and in his capacity as the legal and personal representative of the estate of his son, JAMES CREWS, JR. | CIVIL ACTION NO. 6:18-cv-01647 |
| VERSUS | JUDGE JUNEAU |
| FAE, LLC, ET AL. | MAGISTRATE JUDGE HANNA |

**REPORT AND RECOMMENDATION**

Pending before the court is the motion to remand, which was filed by the plaintiff, James Crews, Sr. (Rec. Doc. 6). The motion is opposed. (Rec. Doc. 12). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that the motion be denied.

**Background**

According to the plaintiff's petition, James Crews, Jr. died on December 22, 2017 as the result of an incident that occurred when he was working as a laborer on a pipeline deconstruction project along Bayou Boutte in St. Martin Parish, Louisiana. The plaintiff contends that, as a load of sheet pilings were being moved with a marsh buggy excavator, the excavator operator lost control, and the excavator's claw struck

Mr. Crews, causing him to fall backward into the bayou and causing the load of sheet pilings to fall on top of him, crushing him to death. The plaintiff, James Crews, Sr., is the decedent's father and the representative of the decedent's estate. He filed suit in the 16th Judicial District Court, St. Martin Parish, Louisiana, seeking to recover damages resulting from his son's death. He sued nine defendants, alleging that their collective and undifferentiated negligence caused the accident and his son's death.

Two defendants, Frogco Amphibious Equipment, Inc. and Frogco Amphibious Equipment, Inc. of Delaware removed the action to this court, with the consent of the other defendants. The removing defendants alleged that this court has subject-matter jurisdiction over the action under 28 U.S.C. § 1332(a) because the parties are diverse in citizenship (when the citizenship of improperly joined defendants is not considered) and the amount in controversy exceeds the jurisdictional minimum. The plaintiff responded with the instant motion to remand, arguing that the parties are not diverse.

Oral argument was held on February 21, 2019, and the parties indicated that they had reached an agreement concerning which parties should properly be defendants in the lawsuit. On March 8, 2019, the plaintiff voluntarily dismissed his claims against seven of the defendants. (Rec. Doc. 19). The plaintiff's claims against the following seven parties were dismissed: FAE, LLC; FAE Rentals, LLC; Frogco Amphibious Equipment, LLC; Frogco Holding, LLC; Frogco Rentals, LLC;

GCSES Management Company, Inc.; and GCSES II Management, Inc. Accordingly, the only two defendants left in the suit are Frogco Amphibious Equipment, Inc. and Frogco Amphibious Equipment, Inc. of Delaware.

According to evidence submitted in opposition to the motion to remand, Frogco Amphibious Equipment, Inc. of Delaware is actually a trade name used by Frogco Amphibious Equipment, Inc. (which was incorporated in Delaware) to distinguish itself from a Louisiana corporation of the same name.[1] This evidence was not refuted by the plaintiff, and this Court finds that there actually is a single defendant remaining in the lawsuit, Frogco Amphibious Equipment, Inc. d/b/a Frogco Amphibious Equipment, Inc. of Delaware, which will be referred to hereinafter as "Frogco."

## **Law and Analysis**

Federal district courts are courts of limited jurisdiction, possessing only the power authorized by the Constitution and by statute.[2] Accordingly, federal courts have subject-matter jurisdiction only over civil actions presenting a federal question[3]

---

[1]   Rec. Doc. 12-3.

[2]   See, e.g., *Griffin v. Lee*, 621 F.3d 380, 388 (5th Cir. 2010); *Halmekangas v. State Farm Fire and Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010); *Howery v. Allstate Ins., Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

[3]   28 U.S.C. § 1331.

and those in which the amount in controversy exceeds $75,000 exclusive of interest and costs and the parties are citizens of different states.[4] A suit is presumed to lie outside a federal court's jurisdiction until the party invoking federal-court jurisdiction establishes otherwise.[5] Because "the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns."[6] The removal statute must therefore be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand and against federal-court jurisdiction.[7] The party invoking subject-matter jurisdiction in federal court has the burden of establishing the court's jurisdiction by a preponderance of the evidence.[8] When an action is removed from state court, as this suit was, the removing party bears the burden of proving that federal-court jurisdiction exists.[9]

---

[4]   28 U.S.C. § 1332.

[5]   *Howery v. Allstate*, 243 F.3d at 916.

[6]   *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995).

[7]   *Carpenter v. Wichita Falls*, 44 F.3d at 366; *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

[8]   *Howery v. Allstate Ins. Co.*, 243 F.3d at 919; *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

[9]   *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 278 (5th Cir. 2008); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005); *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

Accordingly, the removing defendant has the burden of establishing that the court has jurisdiction over this matter.

To remove a case based on diversity jurisdiction, a defendant must demonstrate "that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied"[10] by establishing that the amount in controversy exceeds $75,000 and the parties are diverse in citizenship.[11]

**A.** **The Amount in Controversy**

The amount in controversy is the sum claimed in the plaintiff's complaint if the claim was apparently made in good faith.[12] The parties do not dispute whether the amount-in-controversy requirement is satisfied in this case. Further, because this is a wrongful death lawsuit, this Court finds that it is facially apparent from the allegations set forth in the plaintiff's petition that the amount in controversy exceeds the statutory jurisdictional threshold of $75,000.

---

[10]  *Smallwood v. Illinois Central Railroad Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (*en banc*).

[11]  28 U.S.C. § 1332.

[12]  *St. Paul Reinsurance v. Greenberg*, 134 F.3d at 1253; *De Aguilar v. Boeing Co.*, 47 F.3d at 1408; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Russell*, 972 F.2d 628, 630 (5th Cir. 1992).

### B.     Diversity of Citizenship

The removing defendant must establish "complete" diversity of citizenship.[13] Complete diversity requires that all parties on one side of the controversy are citizens of different states than all parties on the other side.[14] Ordinarily, diversity of citizenship must exist both at the time of the original filing in state court and also at the time that the suit is removed to federal court.[15] Under the judicially-created voluntary-involuntary rule, however, a defendant may remove an action that originally was not removable if a voluntary act by the plaintiff made the case removable.[16] Therefore, when a plaintiff voluntarily dismisses nondiverse parties from the suit, leaving only diverse parties, the suit becomes removable.

In this case, the plaintiff argued in support of its motion to remand that there were defendants whose citizenship was not diverse from that of Frogco, while Frogco argued that the citizenship of any nondiverse defendants need not be considered because they had been improperly joined. The plaintiff's voluntarily dismissal of the defendants other than Frogco changed the analysis. Even if the suit

---

[13]     *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

[14]     *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004); see also 28 U.S.C. § 1332.

[15]     *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996).

[16]     *Morgan v. Chase Home Finance, LLC*, 306 Fed. App'x 49, 52 (5th Cir. 2008) (citing *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 547 (5th Cir. 1967)).

was not removable when it was filed in state court or when it was first removed because of the presence of nondiverse defendants, that impediment to removal ceased to exist when the plaintiff voluntarily dismissed his claims against the other defendants. Accordingly, this Court need not determine whether the dismissed defendants were improperly joined; instead, this Court is only required to determine whether Mr. Crews and Frogco are diverse in citizenship.

The plaintiff in this lawsuit is a natural person, and he seeks to recover on his own behalf and on behalf of his deceased son. He alleged in his petition that he is domiciled in Florida. The citizenship of a natural person is determined by the state in which he is domiciled.[17] Therefore, with regard to the claims asserted on his own behalf, he is a Florida citizen. However, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."[18] According to the petition, the decedent was domiciled in Louisiana. Therefore, Mr. Crews is a Louisiana citizen with regard to the claims he asserted on behalf of his son's estate.

Frogco is a corporation. A corporation's citizenship is determined by its state of incorporation and the state of its principal place of business.[19] In the removal

---

[17] *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

[18] 28 U.S.C.A. § 1332(c)(2).

[19] 28 U.S.C. § 1332(c)(1).

notice, Frogco argued that it a Delaware corporation with its principal place of business in Colorado. In support of that proposition, Frogco submitted the affidavit of Wm. Robert Wright II, one of the four directors of GCSES II Holdings, L.P., Frogco's parent company, which established that Frogco Amphibious Equipment, Inc. was incorporated in Delaware and that Frogco Amphibious Equipment, Inc. of Delaware is a trade name used to distinguish Frogco Amphibious Equipment, Inc. (the Delaware corporation) from a corporation with the same name that was incorporated in Louisiana.[20] Frogco further argued that it has its principal place of business in Colorado.

## C.     Frogco's Principal Place of Business

Frogco contends that its principal place of business is in Colorado while the plaintiff contends that Frogco's principal place of business is in Louisiana. If Frogco's principal place of business is in Colorado, then the parties are diverse in citizenship and this action was properly removed but if its principal place of business is in Louisiana, the parties are not diverse in citizenship and this suit must be remanded. When challenged on allegations of jurisdictional facts, a party must

---

[20]     Rec. Doc. 12-3.

support its allegations with competent proof.[21] A district court has wide but not unfettered discretion to determine what evidence to use in evaluating jurisdiction.[22]

Although a corporation is a citizen of its state of incorporation and the state in which it maintains its "principal place of business"[23] for diversity jurisdiction purposes, the relevant statute does not define the term "principal place of business." The United States Supreme Court defined that term as "the place where the corporation's officers direct, control, and coordinate the corporation's activities."[24] Such a place is often referred to as the corporation's "nerve center," and it "should normally be the place where the corporation maintains its headquarters" so long as it "is the actual center of direction, control, and coordination. . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)."[25] The Fifth Circuit adopted the "nerve center" test.[26]

---

[21] *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010).

[22] *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996).

[23] 28 U.S.C. § 1332(c)(1).

[24] *Hertz Corp. v. Friend*, 559 U.S. at 92-93.

[25] *Hertz Corp. v. Friend*, 559 U.S. at 93.

[26] See *Gu v. INVISTA S.a.r.l.*, 682 Fed. App'x 316, 317 (5th Cir. 2017); *Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516, 519 (5th Cir. 2015); *MetroplexCore, L.L.C. v. Parsons Transp., Inc.*, 743 F.3d 964, 971 (5th Cir. 2014).

Although a corporation may conduct business activities in different locations across multiple states, there can only be one "nerve center."[27] This is true even with respect to corporations that "divide their command and coordinating functions among officers who work at several different locations."[28] Even in such "hard cases," the "nerve center" test "nonetheless points courts in a single direction, toward the center of overall direction, control, and coordination. Courts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other."[29] "When the high-level officers are dispersed geographically, the principal place of business is 'where a critical mass of controlling corporate officers' works or where 'significant corporate decisions and strategy-forming are made,' even if some officers live and work in another state."[30]

Frogco submitted evidence, in the form of affidavits from Frogco's CEO and director, Garrett J. Naquin, and also from Wm. Robert Wright II, one of the four directors of GSCES II Holdings, L.P., Frogco's parent corporation, in support of its contention that its principal place of business is Colorado. According to Mr. Wright,

---

[27]   *Hertz Corp. v. Friend*, 559 U.S. at 93.

[28]   *Hertz Corp. v. Friend*, 559 U.S. at 95-96.

[29]   *Hertz Corp. v. Friend*, 559 U.S. at 96.

[30]   *Rowell v. Shell Chem. LP*, No. CV 14-2392, 2015 WL 7306435, at *4 (E.D. La. Nov. 18, 2015) (quoting *Elizondo v. Keppel Amfels, L.L.C.*, No. 14-220, 2015 WL 1976434, at *7 (S.D. Tex. May 1, 2015)).

work is performed by Frogco in Louisiana but decisions regarding Frogco's "overall strategic direction" were made during relevant time periods by its officers and directors or by its parent company's officers and directors in Colorado.[31] More specifically, he stated that, during all relevant time periods, decisions regarding Frogco's budget were made in Colorado, decisions regarding the hiring and firing of Frogco's senior management personnel were made in Colorado, decisions regarding bonuses and compensation for Frogco's senior management personnel were made in Colorado, decisions regarding insurance and benefit programs for all of Frogco's employees were made in Colorado, decisions regarding Frogco's significant capital expenditures were made in Colorado, decisions regarding bonding support for Frogco's large jobs were made in Colorado, and decisions regarding equity requirements to support Frogco's business were made in Colorado.

The plaintiff did not refute any of that evidence. Instead, the plaintiff noted that records maintained by the Louisiana Secretary of State show a domicile address for Frogco in Delaware and a "principal business office" address in Louisiana as well as an address for its registered agent in Louisiana.[32] But neither a corporation's domicile address nor its "principal business office" nor its agent's address establishes its nerve center. The Supreme Court expressly rejected the idea that a

---

[31] Rec. Doc. 12-3 at 6.

[32] Rec. Doc. 6-3 at 5.

Securities and Exchange Commission filing listing a corporation's "principal executive offices" would be sufficient to establish the corporation's principal place of business,[33] and subsequent cases have held that filings with state officials do not control the nerve center inquiry because they were made "for purposes and in contexts other than diversity jurisdiction."[34]

The plaintiff also noted that Frogco's website lists the company's "headquarters" as being in Louisiana.  "[P]ublicly available [information] on [a company's] official website[] is an authoritative source" in certain contexts where the facts a court is taking notice of may be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[35]  But the statement on Frogco's website that its headquarters is in Louisiana was not made for the purpose of establishing the company's citizenship for purposes of determining a court's subject-matter jurisdiction.  Furthermore, a "corporation's description of a location

---

[33]   *Hertz Corp. v. Friend*, 559 U.S. at 97.

[34]   See, e.g., *Balachander v. AET Inc., Ltd.*, No. H-10-4805, 2011 WL 4500048, at *7-9 (S.D. Tex. Sept. 27, 2011) (discounting statements made in corporate reports and state filings); *Uglunts v. Americare Services, Inc*., No. 3:12-CV-4388-D, 2013 WL 3809681, at *4 n. 3 (N.D.Tex.,2013) (quoting *York Grp. v. Pontone*, No. 2:10-cv-01078-ECF, 2012 WL 3127141, at * 16 (W.D. Pa. July 31, 2012) ("Following *Hertz*, courts have specifically rejected corporate reports, tax filings, and corporate-registration statements as being evidence sufficient to demonstrate a corporation's principal place of business.")).

[35]   *United States v. Flores*, No. 16-40622, 730 Fed. App'x 216, 219 n. 1 (5th Cir. 2018) (concurring opinion).

as its headquarters should not, without more, settle the issue."[36]  Accordingly, the fact that a company's website lists a particular address as its headquarters cannot defeat jurisdiction.[37]

While the plaintiff argued that the affidavits submitted by Frogco are self-serving and suggested that Mr. Naquin is Frogco's ultimate corporate decisionmaker, the plaintiff offered no evidence to support that contention or refuting the facts set forth in the affidavits offered by Frogco regarding the site of decision making on strategic matters such as budgets, bonding, capital expenditures, salaries for senior management personnel, and insurance programs for employees. It is undisputed that Frogco conducts operations in Louisiana, but the evidence established that the company's overall strategic direction is managed by its officers and directors in Colorado.  This Court therefore finds that Frogco's principal place of business – that is, its "'nerve center' or the place of actual direction, control, and coordination"[38] – is in Colorado.

---

[36]   *Balachander v. AET Inc., Ltd.*, 2011 WL 4500048, at *5.

[37]   *Gremillion v. AEP Texas Central Company*, No. 1:17-cv-225, 2018 WL 1308541, at *3 (S.D. Tex. Jan. 17, 2018) (citing *Avalos v. Cont'l Airlines, Inc.*, No. H-11-711, 2011 WL 2357374, at *2 (S.D. Tex. June 10, 2011)).

[38]   *Hertz Corp. v. Friend*, 559 U.S. 97.

## D.     Removal under Maritime Law

In his petition, Mr. Crews sought to recover under Louisiana's negligence laws and also stated that "[t]his is an Admiralty and Maritime claim" within the state court's jurisdiction pursuant to the Savings to Suitors Clause, 28 U.S.C. § 1333. In its removal notice, Frogco alleged that federal-court subject-matter jurisdiction is grounded on diversity under 28 U.S.C. § 1332, stated that the plaintiff's claims do not arise under maritime law, and argued that the petition's reference to maritime law does not preclude removal of this action. Whether the plaintiff has properly articulated a maritime law claim is not currently before the court for resolution. This Court has already determined that there is subject-matter jurisdiction because the parties are diverse in citizenship and the amount in controversy exceeds the jurisdictional threshold. Therefore, this Court need not decide whether the matter is removable under maritime law. Accordingly, further discussion of that topic is pretermitted.

## Conclusion

Having found that the plaintiff, James Crews, Sr., and the defendant, Frogco Amphibious Equipment, Inc. d/b/a Frogco Amphibious Equipment, Inc. of Delaware, are diverse in citizenship and that the amount in controversy exceeds the requisite threshold, this Court concludes that the court has subject-matter jurisdiction

over this action.  Accordingly, IT IS RECOMMENDED that the plaintiff's motion for remand (Rec. Doc. 6) should be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[39]

Signed at Lafayette, Louisiana, this 19th  day of March 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[39] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).