UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JAMES CREWS SR                    CIVIL ACTION NO. 6:18-CV-01647

VERSUS                              JUDGE JUNEAU

F A E L L C ET AL                   MAGISTRATE JUDGE HANNA

**MEMORANDUM RULING AND ORDER**

Before the Court is a Motion for Summary Judgment on Vicarious Liability by Frogco Amphibious Equipment Inc. dba Frogco Amphibious Equipment Inc. of Delaware ["Frogco"], Rec. Doc. 41, on the grounds that Roland Guillory was the borrowed employee of nonparty, Allison Offshore Services, II, LLC, ["Allison"] at all times pertinent to this litigation and thus, that Frogco is free of any vicarious liability for the negligence of Roland Guillory. This Motion is Opposed by Plaintiff, Rec. Doc. 45. For the following reasons, the Court denies Frogco's Motion for Summary Judgment, Rec. Doc. [41].

**Factual Background**

Kinder Morgan Contracting Services ["Kinder Morgan"] hired Allison to perform construction work on a pipeline along Bayou Boutte near Duck Lake in the Atchafalaya Basin, Rec. Doc. 45 p 15. When Kinder Morgan was unable to obtain permits that Allison needed to dredge a waterway from Bayou Boutte to the

worksite, Allison hired Frogco to provide amphibious equipment (including excavators and operators) to allow access to the worksite, Id. In late November or early December of 2017, Frogco sent Roland Guillory, an excavator operator and several others to work at the site, Rec. Doc. 41 -1 p 16.

The petition alleges that James Crews, Jr. ('Mr. Crews") died on December 22, 2017 as the result of an incident that occurred when he was working for Allison as a laborer on a pipeline deconstruction project. Plaintiff contends that as a load of sheet pilings was being moved with a marsh buggy excavator, Roland Guillory lost control, and the excavator's claw struck Mr. Crews, causing him to fall backward into the bayou and causing the load of sheet pilings to fall on top of him, crushing him to death. Plaintiff seeks to hold Frogco vicariously liable for Guillory's alleged negligence in operating the excavator on the day of the incident, Rec. Doc. 1-2.

Plaintiff, James Crews, Sr., is Mr. Crew's father and the representative of his estate. Plaintiff filed suit in the 16th Judicial District Court, St. Martin Parish, Louisiana, seeking to recover damages resulting from his son's death, Rec. Doc. 1-2. Frogco removed the matter to this Court, Rec. Doc. 1.

In the Motion for Summary Judgment before the Court, Frogco contends that the undisputed evidence establishes that Roland Guillory (the alleged individual

tortfeasor) was the borrowed employee of Allison (not a party to the lawsuit), thus, Frogco is not vicariously liable for his negligence, Rec. Doc. 41.

Plaintiff alleges negligence claims under both general maritime law and Louisiana state law, Rec. Doc. 1-2, para. VII. Frogco addresses the applicability of maritime law versus Louisiana law in its Motion for Summary Judgment on Punitive Damages, Rec. Doc. 40, set for oral argument on September 10, 2020. But neither party addresses the choice of law clause in the Master Service Agreement, Rec. Doc. 45-3, p 17. The Court finds that for purposes of this Motion, the borrowed employee doctrine, and the factors determining the applicability of this doctrine, are the same under either general maritime law or Louisiana state law. *U.S. Fire Insurance Co. v. Miller*, 381 F.3d 385 (5th Cir. 2004), *Raymo v. Cargill Inc.,* 2014 WL 545872 (W.D. La.).

**Law**

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute of material fact is ''genuine'' if the evidence would allow a reasonable jury to find in favor of the non-movant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Initially, the movant bears the burden of identifying those portions of the pleadings and discovery in the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Id*. Summary judgment is proper ''against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'' *Id.* at 322.

Once a properly supported motion for summary judgment has been made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, "the judge's role is not to weigh the evidence and determine the truth of the matter, but to decide whether there is a genuine issue for trial.'' *Id.* at 249.

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. "[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249. However, more than a "mere scintilla of evidence" is required to defeat

summary judgment. *Id.* at 252. Evidence must be presented on which a jury could reasonably find for the non-movant. *Id.*

**Borrowed Servant Doctrine**

Under the borrowed servant doctrine, "[o]ne may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation." *Total Marine Servs., Inc. v. Director, OWCP*, 87 F.3d 774, 777 (5th Cir. 1996).

Whether "borrowed employee status" exists is a question of law for the district court to determine. There are, however, nine separate factual inquiries underlying "borrowed employee status" which must be resolved before the district court can make the necessary determination. *Hotard v. Devon Energy Production Co. L.P.,* 308 Fed. Appx 739 (5th Cir. 2009); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238 (5th Cir. 1988). The relevant factors which are suggested in *Ruiz v. Shell Oil Co.,* 413 F.2d 310 (5th Cir. 1969) and referred to as the *Ruiz factor* include:

> (1) Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?
> (2) Whose work was being performed?
> (3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?

(4) Did the employee acquiesce in the new work situation?
(5) Did the original employer terminate his relationship with the employee?
(6) Who furnished tools and place for performance?
(7) Was the new employment over a considerable length of time?
(8) Who had the right to discharge the employee?
(9) Who had the obligation to pay the employee?

The existence of a contract provision purporting to prohibit borrowed employee status could create a factual dispute on the third factor, however, summary judgment is appropriate when the remaining factors clearly point to borrowed-employee status. *Billizon v. Conoco, Inc.*, 993 F.2d 104, 105 (5th Cir. 1993).

## Contentions of the Parties

Regarding the *Ruiz* factors, both parties agree that the length of time factor is neutral. Frogco contends that all of the other *Ruiz* factors support its assertion that Guillory was the borrowed employee of Allison at the time of the accident. Plaintiff contends that all of the other *Ruiz* factors support its position that Guillory was not the borrowed employee of Allison.

**Frogco's Motion for Summary Judgment**

In the Motion before the Court, Frogco seeks to use the borrowed servant defense to defeat vicarious liability.[1] In support of its assertions that Guillory was the borrowed employee of Allison, Frogco relies on:

1. Guillory's testimony that he participated in Allison safety meetings and that Allison personnel would then instruct Guillory on what work would be performed that day. Guillory also testified that his Frogco supervisor Travis Knight never visited that worksite and he had no reason to contact him during this job as "we [was] working for Allison" and "they [was] telling me what to do and whatnot," Rec. Doc. 41-1 p 8, Guillory Depo. pp 75, 101.

2. Frogco's written discovery responses further provide: "Guillory was working as directed by Allison [Offshore] to move sheet pilings … from the work site to a skid barge provided by [Frogco]," Rec. Doc. 41-6, p 4.

3. Allison's testimony - through its representative Jeff Rotsteet - that Allison subcontractors could not make decisions without Allison's approval and "any

---

[1] Frogco relies on the borrowed servant defense in which a nominal employee seeks to avoid vicarious liability by proving that another company was controlling the worker. *Santacruz v. Hertz Equipment*, 2015 WL 23440330 (S.D. Tex. 2015) and *McBee v. U.S.,* 101 Fed. Appx. 5 (5th Cir. 2004), (Summary judgment affirmed in favor of the defendant as the evidence established the alleged individual tortfeasor was the borrowed employee of a nonparty, such that the defendant could not be vicariously liable for his negligence.)

decision on how to rig the piling to the excavator had to be at least approved by Allison," Rec. Doc. 41-1 p 9, Allison Depo. p 34-35).

4. Frogco's testimony - through its representative Travis Knight - that he had no ability to control Guillory's work once he was dispatched to Allison, that Guillory took all direction from Allison and that "the point person on the job would have been Allison," Rec. Doc. 41-1 p 10, Frogco Depo. pp 58, 66-67.

Frogco admits that "it provided two excavators with operators, a marsh buggy with an operator, skid barge(s) and related equipment while Allison…. provided some equipment, the place of performance, living quarters and transportation to/from the worksite." Rec. Doc. 41-1, p 17.

**Plaintiff's Response**

In response, Plaintiff asserts that neither Frogco nor Allison Marine intended for Allison Marine to have control over Guillory or any other Frogco employee, as evidenced by the Master Service Agreement ("MSA") between Frogco and Allison[2] which states:

> 7. Relationship of the Parties
>     7.1 <u>Independent Contractor</u> - [Frogco] certifies that it is and shall conduct itself as an independent contractor

---

[2] As Frogco points out, the MSA is not signed by Allison. However, Frogco relied on the MSA in "its Opposition to plaintiff's Motion to Remand and believes it is a valid contract," Rec. Doc. 47 p 3, n 2. Plaintiff relies on the MSA in Opposition to the Motion for Summary Judgment. Accordingly, the Court assumes that neither party disputes its validity.

> in the performance of the Work. [Frogco] shall retain and exercise the authority and right to direct and control the manner in which all Work for [Allison] is performed; provided, however, that [Allison] retains the general right, but is in no way obligated, to observe [Frogco] in the performance of all Work contemplated hereunder. It is the express understanding and intention of the Parties that [Frogco] shall act as an independent contractor at all times, that no relationship of master and servant or principal and agent shall exist between [Allison] and [Frogco] and any of [Frogco's] employees, agents, representatives or subcontractors. [Frogco] further certifies that none of the employees, agents or subcontractors of [Frogco] shall be considered to be or hold themselves out or act as employees of [Allison]. Contractor agrees that neither [Frogco] nor any of its employees, agents or subcontractors shall act as an agent of [Allison]."

Plaintiff further submits the testimony of Guillory stating that his training regarding operation of the excavator and other heavy equipment came from Frogco, and it was only his daily Job Safety Analysis (JSA) meetings which were led by Allison Marine, Rec. Doc. 45-5, pp 32, 37. Plaintiff further claims that Travis Knight remained Guillory's supervisor on this job and that Guillory did not have or even know of an Allison supervisor. In support of this, Plaintiff submits the testimony of Frogco (Travis Knight) stating:

> Q. Okay. Okay. Today if he had an on-the-job issue, would you be the reported to? This is today.
> A. Yes, sir.
> Q. Okay. Would that have been the same

thing back at the time of this accident?
A. Yes, sir, Rec. Doc. 45-4, p 4.

Plaintiff also claims that there was bad cell service on this site and although Guillory did not need to contact Travis Knight, Guillory had some kind of booster on his phone and was the contact person for the other two Frogco employees to get in touch with Travis Knight if necessary, Rec. Doc. 45-5, p 22. In addition, Plaintiff asserts that although Allison provided the Personal Protective Equipment (PPE), the location of the job site/living quarters, and transportation to and from the worksite; Frogco provided the essential equipment and specialized use of that equipment as set forth in the Master Service Agreement:

> 8. OBLIGATIONS OF CONTRACTOR
> 8.1 Contractor-Furnished Items - Contractor shall
> furnish, at its own expense, that machinery, equipment,
> tools, spare parts, transportation, supplies and any other
> items specified in the Work Order to be used in the
> performance and timely completion of the Work ..., Rec. Doc. 45-3.

Plaintiff relies on *Alday v. Patterson Truck Line, Inc.,* 750 F.2d 375 (5th Cir. 1985) where the parties had a MSA similar to the one in this case which "attempted to negate borrowed employee status" and provided that the contractor shall furnish the material, equipment, and tools, and that the company will reimburse the contractor for the amount paid to such employee. In *Alday*, the Fifth Circuit held that even though some of the actions of the parties' actions went against the

MSA in practice, the language in the agreement was enough to "raise an issue of fact as to Alday's status as an alleged borrowed employee of Patterson that precludes summary judgment."

Finally, Plaintiff admits that the length of employment is neutral but argues that since it was such a short period of time - the invoices for the work start at the beginning of December, 2017, the work was interrupted by a snowstorm, the accident happened on December 22, 2017 and Guillory did not go back to work at the site - there is a genuine issue of fact as to whether Guillory worked for Allison for a considerable length of time, whether he acquiesced in his work situation and whether the parties altered the terms of the Agreement so that Allison controlled Guillory.

**Frogco's Reply**

In response, Frogco contends that the evidence establishes that the parties impliedly altered the contractual provisions when considering the reality of the workplace, thus; the MSA does not create a genuine issue of material fact. *Melancon v. Amoco Prod. Co.,* 834 F.2d 1238, 1245 (5th Cir. 1988) (Fifth Circuit found the employee was a borrowed employee despite language that "no Beraud employee is to be considered the agent, servant or representative of Amoco," because the reality of the worksite and the parties' actions "can impliedly modify,

alter or waive express contract provisions.") and *Robertson v. W.& T Offshore, Inc.,* 712 F.Supp.2d 515 (W.D. La. 2010) (Notwithstanding agreement of the parties Court found plaintiff was the borrowed servant of W & T Offshore, Inc. because plaintiff was performing the work of W & T while on the platform and was supervised by W & T and/or Baker personnel, thus, the parties' actions in carrying out the contract impliedly modified the express provisions of the contract.)

Frogco distinguishes *Alday* because the plaintiff had worked only a single day and there was a "sparse factual showing" of borrowed employee status.

**Analysis**

In addition to the evidence Plaintiff relies on, the MSA provides that the Contractor supervises the personnel as stated:

> 8.2 Personnel - Contractor [Frogco] shall furnish, at its own expense, that personnel, labor, expertise and supervision (skilled in their trades and trained in safety) to perform and timely complete the Work as described in, and in accordance with, the applicable Work Order.

The agreement also provides that the work was to be done in accordance with an oral or written work order (which we have not been provided evidence of) and any attempt to supersede it must be in writing as follows:

> 5. WORK COVERED BY THIS AGREEMENT

All work and/or services requested by Client and accepted by Contractor shall be the subject of an order for Work agreed to by Client and Contractor (the "Work Order"). The Work Order will be either oral or written, and provide, where applicable, a description of the Work to be performed, the consideration to be paid, the job location, equipment, services, supplies, and personnel to be provided by Contractor, and the items, if any, to be furnished by Client. If written, the Work Order may be in a form similar to that shown in Exhibit "A-1", or any other form that is agreed to by the Parties. Nothing in any Work Order, whether written or oral, shall modify or change the terms contained in this Agreement, which shall at all times govern and control; unless the Work Order references the specific provision(s) of this Agreement to be modified and the Work Order is executed by authorized representatives of the Parties; and it is further agreed and understood that any such modification shall be effective only with respect to that particular Work Order and no other.

30. ENTIRE AGREEMENT

This Agreement supersedes all prior oral or written proposals, communications or other agreements related to the subject matter of this Agreement. This Agreement sets forth the entire agreement between the Parties with regard to the subject matter of this Agreement and no amendment shall be binding upon the Parties unless in writing and signed by authorized officers of both Parties. In addition, in the event of any conflict this Agreement shall control over any subsequent writing between the Parties unless the intent to amend or supercede this Agreement is expressly stated in a writing executed by a representative of each party authorized to amend this Agreement.

The Court finds that the existence of the MSA purporting to prohibit borrowed employee status creates a factual dispute on the third *Ruiz* factor. In addition, the Court finds that at the very least there are also substantial unresolved factual issues regarding who had control over Roland Guillory and who furnished the tools and place for the performance. The MSA and the fact that Travis Knight stated that Guillory should contact him if there were problems on this job and that he didn't name an Allison employee as his supervisor could cause a reasonable juror to infer that Knight remained his supervisor. In addition, the MSA and the testimony creates substantial unresolved factual issues regarding which tools were necessary for the performance of the work and who provided those tools. Thus; the remaining factors do not clearly point to borrowed servant status and summary judgment is inappropriate at this stage. See *Billizon v. Conoco*, Inc., 993 F.2d 104, 105 (5th Cir. 1993). Accordingly;

For the foregoing reasons, **IT IS ORDERED** that the Motion for Summary Judgment on vicarious liability filed by Frogco, Rec. Doc. [41] is **DENIED.**

**THUS DONE AND SIGNED** in Lafayette, Louisiana, on this 7th day of April, 2020.

_____
MICHAEL J. JUNEAU
UNITED STATES DISTRICT JUDGE